UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | 3:18-cr-00131-TMB-MMS |
| Plaintiff, | |
| vs. | **FINAL REPORT AND RECOMMENDATION ON MOTION FOR HEARING PURSUANT TO *FRANKS v. DELAWARE* [1]** |
| ANTOINE DAVIS, | |
| Defendant. | |

## I.    MOTION PRESENTED.

On December 27, 2019, Defendant Antoine Davis ("Davis"), through counsel, requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[2] [Dkt. 80] [*Franks* Hearing]. On the same day, Davis, filed a motion to suppress, at Dkt. 75, and four other related motions,[3] all of which have since been resolved by this Court. On January 24, 2020, at Dkt. 106, the Government filed a Response in Opposition to Davis' Motion for *Franks* Hearing. On February 25 and 26, 2020, this Court held status conferences regarding

---

[1] In light of Davis' Motion to Suppress [Dkt. 75] being denied by the District Court, this report and recommendation is being issued as a final report and recommendation. Pursuant to Fed. R. Crim. P. 59(b)(3), any objections will be considered by the District Court Judge, who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendations.

[2] The Motion itself failed to provide details of the factual bases for the motion. The details of the claim can be found in Dkts. 75 (filed concurrently and "incorporated by reference"), 97, and 104.

[3] Dkt. 77 (Motion to Compel); Dkt. 79 (Motion for Hearing In Camera and Ex Parte); Dkt. 81 (Motion for Evidentiary Hearing regarding Defendant's Pretrial Motions); Dkt. 82 (Motion for Disclosure of Grand Jury Proceedings).

1

Davis' pending motions, including the Motion for *Franks* Hearing. [Dkts. 121 & 122]. On March 5, 2020, at Dkt. 130, with this Court's leave, Davis filed a consolidated reply to the Government's responses to Davis' prior motions, among them Davis' Motion for *Franks* Hearing. On March 11, 2020, at Dkt. 131, the Government filed a consolidated response to Davis' consolidated reply. On March 20, 2020, with this Court's leave, Davis filed a *sur* reply to the Government's response, at Dkt. 135, along with a declaration of counsel, at Dkt 136.

For the reasons set forth below, this Court recommends the Defendant's Motion for a *Franks* hearing be DENIED.

## II. BACKGROUND.

On March 25, 2021, at Dkt. 237, this Court issued a final report and recommendation on Davis' motion to suppress, recommending denial of suppression. On April 7, 2021, at Dkt. 238, that final report and recommendation was adopted in its entirety by the District Court Judge. Because that final report and recommendation comprehensively covered the procedural posture of this case, the facts of this case, as well as issues related to probable cause for the search warrant, for the sake of brevity, that background and discussion will not be repeated here.

## III. APPLICABLE LAW.

Under *Franks,* a defendant must satisfy a two-pronged test to be entitled to an evidentiary hearing.[4] First, a defendant "must make a 'substantial preliminary showing'

---

[4] *United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir. 1982).

2

that the affidavit contained actual falsity, and that the falsity was either deliberate or resulted from reckless disregard for the truth."[5] The defendant's allegations cannot be "merely conclusory; rather, they must be accompanied by a detailed offer of proof."[6]

Second, the court must determine that the challenged statement is "necessary to a finding of probable cause, *i.e.*, that its excision would leave the affidavit with insufficient content to establish probable cause."[7] The effect of misrepresentations and omissions on the existence of probable cause is cumulatively considered.[8]

### III. ANALYSIS.

Davis contends that under *Franks*[9], the warrant affiant— FBI Task Force Officer Leonard Torres (hereinafter, "TFO Torres")—made "reckless or intentional misstatements and omissions, such that, at a minimum, a *Franks* hearing should be held."[10] For the reasons explained below, this Court disagrees. Even accepting as true Davis' assertions regarding allegedly false or misleading statements, or deliberate or reckless omissions of fact; the evidence submitted to the issuing magistrate judge was sufficient to support a finding of probable cause.

---

[5] *Id.* at 1360 [quoting *Franks*, 438 U.S. at 155].
[6] *Id.* at 1360 (citing *Franks*, 438 U.S. at 171). *But see, United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), amended, 769 F.2d 1410 (9th Cir. 1985):
> Clear proof of deliberate or reckless omission is not required. *See United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir.1982). Such proof is reserved for the evidentiary hearing. *Id*. At this stage, all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.

[7] *Chesher*, 678 F.2d at 1360 (citing *Franks*, 438 U.S. at 171–72).
[8] *Stanert*, 762 F.2d at 782.
[9] 438 U.S. at 156
[10] *Id.*

3

**A. Davis fails to meet the first prong of the *Franks* test.**

In order to meet the first prong of the *Franks* test, Davis must make a substantial preliminary showing that TFO Torres' Affidavit not only contained actual false statements, but that TFO Torres made such false statements intentionally or with reckless disregard for the truth.[11] Even assuming, *arguendo*, that certain pieces of information were negligently left out, a negligent omission is not enough to meet the standard of actual falsity.[12] Under *Franks,* allegations of negligence or innocent mistake are insufficient.[13] For the reasons explained below, Davis has failed to meet the first prong of *Franks*.

While there may be minor errors, inaccuracies, and/or omissions in TFO Torres' Affidavit, there is no indication that they were deliberate or material. Davis asserts, for instance, that the Confidential Human Source [CHS] and Davis never discussed the purchase of methamphetamine and heroin over the phone, contrary to paragraph 16 of the Affidavit.[14] The sole basis for that conclusion, however, is the absence of a recording of such a call. Given that subsequent recorded conversations exist, which explicitly discuss the purchase of illegal narcotics, the content of the unrecorded call was not material to the probable cause determination.

Davis also alleges that "TFO Torres. . . falsely sw[ore] that '[t]he CHS purchased 56.8 grams of methamphetamine and .06 grams of heroin from the [Defendant] for

---

[11] *See Chesher*, 678 F.2d at 1360.
[12] *United States v. Chavez-Miranda,* 306 F.3d 973, 979 (9th Cir. 2002).
[13] *Franks,* 438 at 171.
[14] Dkt. 75 at 13.

4

$1420'."[15] Though it appears, based upon the transcript of the controlled buy, that the CHS likely purchased $1580 worth of methamphetamine and heroin, not the $1420 stated in the Affidavit, there is no indication that TFO Torres deliberately misrepresented the amount, or that the difference in the stated amount would have been material to the magistrate judge's finding of probable cause. The audio recording of the CHS's discussion of the amount of methamphetamine and heroin purchase is ambiguous, and it is understandable how the amount may have been misconstrued by TFO Torres.

Davis, additionally, argues that TFO Torres' failure to include in the Affidavit that the CHS was not searched before the controlled buy[16] constituted an intentional or reckless material omission. Davis has failed to explain away: (1) the fact that the CHS was in the presence of law enforcement the entire day leading up to the controlled buy; and (2) Davis' conversation between the CHS and himself at the point-in-time of the controlled buy, where there is a contemporaneous recorded conversation that gives the distinct impression that a drug transaction was happening.[17] It is unclear to this Court how omitting the failure to search CHS prior to the controlled buy would have "manipulate[d] the inferences [the] magistrate [judge]. . . [would have] draw[n]" in his probable cause analysis, or how including that fact was "required to prevent technically true statements in the affidavit from being misleading.[18]

---

[15] Dkt. 75 at 14 (quoting the Affidavit at ¶20).
[16] Dkt. 75 at 16.
[17] Dkt. 114.
[18] *Stanert*, 762 F.2d at 781.

Regarding Davis' point that the Affidavit should have included the fact that the CHS received compensation for her services as a CHS, this Court agrees.[19] However, as the Government correctly notes, Davis has failed to meet his burden to explain how this omission rose to the level of a reckless omission.[20] Even assuming that the omission could be considered reckless—because it related to possible motives for the CHS's cooperation with TFO Torres and her testimony, there is no indication that it was material—given other facts and circumstance that supported the reliability of the CHS's information.[21]

Regarding Davis' assertion that the Affidavit inadequately described the CHS's criminal history, the Court sees no evidence that this was the case.[22] Additionally, Davis' assertion that the Affidavit inadequately describes the criminal histories of two other witnesses to Davis' drug trafficking, the Court finds the criminal histories to have been sufficient.[23] The relevant criminal history, especially that related to crimes of dishonesty, were complete in that area. Given the very limited use of the two other witnesses, no further history was required. Finally, Davis asserts that the Affidavit inadequately described his own criminal history due to its lack of reference to the specific charges or dates, this Court

---

[19] Dkt. 95-1 at 11-12. On October 3, 2018, the CHS received a payment of $500 for her assistance to law enforcement between October 1 and 5, 2018. Dkt. 97-4 at 1. On October 11, 2018, the CHS received a payment of $600 for her assistance to law enforcement between October 4, 2018 and November 4, 2018. *Id*. at 2.
[20] Dkt. 106 at 10.
[21] *See* Dkt. 135 at 15-17, and 28-30, regarding this Court's assessment of the CHS's credibility.
[22] Dkt. 75 at 26.
[23] Dkt. 75 at 28.

disagrees.[24] The Affidavit described Davis' criminal background with sufficient detail to place the rest of the Affidavit in context.

For the reasons stated above, Davis has failed to meet his burden under the first prong of the *Franks* test.

**B. Davis fails to meet the second prong of the *Franks* test.**

Under the second prong, in cases of affirmative misrepresentations, "when material that is the subject of the alleged falsity or reckless disregard is set to one side," the court must determine if "there remains sufficient content in the warrant affidavit to support a finding of probable cause."[25] In turn, when deliberate or reckless omissions are at issue, a reviewing court must consider "whether the affidavit, once corrected and supplemented, would provide a magistrate with a substantial basis for concluding that probable cause existed."[26] Here, assuming that Davis supplied a "substantial preliminary showing" of deliberate or reckless falsity or omission under the first prong of the *Franks* test, the Affidavit is still supported by enough information for the magistrate judge to have made a

---

[24] Dkt. 75 at 27. *See* Dkt. 75-2:
> Antoine Davis criminal history includes the following from California: eight drug-related convictions to include possession, manufacturing, and distribution of controlled substances, as well as being a felon in possession of a firearm. Davis also has a non-extraditable arrest warrant for being a felon in possession of a firearm from Nevada. The warrant was issued on August 2, 2017.

[25] *Franks*, 438 U.S. at 171–72.
[26] *Stanert*, 762 F.2d at 782

7

Case 3:18-cr-00131-TMB-MMS    Document 248    Filed 04/26/21    Page 7 of 10

probable cause determination, excluding the challenged facts and including the omitted facts. Accordingly, Davis' arguments fail under the second prong of *Franks*.[27]

As explained at greater length in this Court's final report and recommendation at Dkt. 237, based upon this Court's review of the record: 1) the CHS was a credible source, and the information provided in the Affidavit regarding her basis of knowledge was sufficient for the magistrate judge to evaluate her credibility. The information provided in the Affidavit regarding the controlled buy, viewed in concert with the information provided by the CHS, and other facts and circumstances described in the Affidavit, supported the magistrate judge's determination of probable cause.[28]

In finding that the CHS provided credible information, this court need not, and does not, find that there is no evidence which impugns her credibility. Key pieces of information provided by the CHS that support her credibility included: 1) the exact location of Davis's apartment; 2) that Davis kept significant quantities of drugs in that apartment, including heroin and methamphetamine; 3) that Davis sold drugs out of that apartment; 4) that Davis was a pimp; 5) that Davis tried to recruit the CHS to work for him as a prostitute; 6) that Davis tried to set the CHS up in an apartment to engage in prostitution; 7) that Davis traveled between California and Alaska; and 8) that Davis had spent significant time in prison.[29] Most importantly, she participated in an attempted controlled buy of narcotics

---

[27] *Chesher*, 678 F.2d at 1355.
[28] *See* Dkt. 135 at 15-17, and 28-30, regarding this Court's assessment of the CHS's credibility; *see Id.* at 17-19, and 25-28, regarding this court's discussion of the controlled buy.
[29] As explained at Dkt. 135, the CHS's credibility was extensively reviewed by this Court; *see also* Dkt. 75-2 at 11.

8

from Davis in the apartment that she previously identified as belonging to Davis.[30] That the CHS received compensation from law enforcement and that she was not searched prior to the controlled buy are, as Davis argues, facts which reduce her credibility. However, balancing the evidence in support of her credibility with the information against, this court finds her to be credible.

Because Davis has failed to make any assertion in his Motion that, if accepted as true and known to the magistrate judge, would have undermined the CHS's credibility as a source, or brought the fact that the CHS purchased some quantify of narcotics from Davis during the controlled buy into question, Davis has failed to meet the burden of proof under *Franks*

## IV. CONCLUSION.

Therefore, this Court recommends that Davis's Motion at Dkt. 80 be DENIED.

DATED this 26th day of April 2021, at Anchorage, Alaska.

*s/ Matthew M. Scoble*
U.S. MAGISTRATE JUDGE

Pursuant to Fed. R. Crim. P. 59(b)(2) and D. Alaska Loc. Mag. R. 6(a), a party seeking to object to this final finding and recommendation shall file written objections with the Clerk of Court no later than the **CLOSE OF BUSINESS** on **May 4, 2021**. Pursuant to Fed. R. Crim. P. 59(b)(3), objections will be considered first by the District Court Judge, who will then accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. *Miranda v. Anchondo, et al.*, 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. *United*

---

[30] *Id.* at 13.

*States v. Howell*, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before the **CLOSE OF BUSINESS** on **May 7, 2021**. The parties shall otherwise comply with provisions of D. Alaska Loc. Mag. R. 6(a). **The shortened objection and response deadlines are necessary due to the looming trial date. D. Alaska Loc. Mag. R. 6(a) authorizes the Court to alter the standard objection deadlines.**

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).